UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES R. MISCHKA,    )   CASE NO.  1:13-cv-1881
                     )
        PLAINTIFF,   )   JUDGE SARA LIOI
                     )
vs.                  )
                     )   MEMORANDUM OPINION
                     )
                     )
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
                     )
        DEFENDANT.   )

On September 29, 2014, Magistrate Judge Nancy Vecchiarelli submitted her Report and Recommendation (Doc. No. 26 ["R&R"]) with respect to plaintiff James Mischka's request for judicial review of defendant Acting Commissioner of Social Security's ("Commissioner") denials of his applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, and Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act. The R&R recommends affirmance of the Commissioner's decisions. Plaintiff has filed objections to the R&R (Doc. No. 27 ["Obj."]), and the Commissioner has filed a response (Doc. No. 28 ["Resp."]).

Upon *de novo* review of those portions of the R&R to which plaintiff has made objection, the Court affirms the Commissioner's decisions denying benefits and dismisses this case.

I. **BACKGROUND**

Because plaintiff objected only to the portion of the R&R recommending affirmance of the Commissioner's denials of benefits, the remainder of the R&R—including its thorough account of the factual and procedural history of the case—is hereby accepted as written. (*See* R&R at PageID # 171-89.)[1]  Nonetheless, this case is procedurally unusual because it involves two applications for benefits, multiple administrative hearings, and decisions from three different administrative law judges ("ALJ"). It is, therefore, necessary to briefly retrace the course taken by the parties to place the present objections in context.

Plaintiff filed his first application for benefits in 2006, citing the existence of certain physical and mental limitations. (*See* Administrative Transcript ["Tr."] 359.) After the application was denied initially and upon reconsideration, it was submitted to ALJ James Quigley for a hearing. In a decision, dated October 30, 2008, ALJ Quigley denied plaintiff's application on the basis that he was not disabled. (Tr. 368.) In so ruling, ALJ Quigley found that plaintiff could perform a limited range of light work. (Tr. 366.) After the Appeals Council refused to exercise jurisdiction, plaintiff brought his first suit in the United States District Court for the Northern District of Ohio. (*See* U.S.D.C. N.D. Ohio, No. 1:09-cv-2291). Magistrate Judge Greg White issued a report and recommendation, later adopted by the Court, recommending that ALJ Quigley's decision

---

[1] Unless otherwise specified in this Memorandum Opinion, all page numbers refer to the Bates Stamp affixed by the Commissioner upon manually filing the administrative record with this Court. Where (as here) the page number represents the page identification number generated by the Court's electronic docketing system, the page number will be preceded by "PageID # __."

be reversed and remanded and providing specific instructions upon remand. *Mischka v. Astrue*, No. 1:09-cv-2291, 2010 WL 2759651, at *7 (N.D. Ohio July 13, 2010).

On remand, and after a second administrative hearing, ALJ William Vest ("ALJ Vest") issued a decision denying plaintiff's application upon a finding that plaintiff was not disabled. (Tr. beginning at 42.) Like ALJ Quigley, ALJ Vest found that plaintiff retained the physical residual capacity to perform light work. (Tr. 47.) In addition, ALJ Vest found that plaintiff's mental deficiencies limited him to work involving "only simple, repetitive, non-production oriented 1-, 2-, 3-step job tasks." (Tr. 50.) Plaintiff's request for review of ALJ Vest's April 4, 2011 by the Appeals Council was ultimately denied on June 27, 2013, at which time ALJ Vest's decision became the final decision of the Commissioner. (Tr. 5-8.)

In September 2009, before the decision denying the first application was final, plaintiff filed a second application for benefits. After this second application was denied initially and upon reconsideration, the matter was submitted to ALJ Frederick Andreas ("ALJ Andreas") for an evidentiary hearing. In a decision, dated January 5, 2012, ALJ Andreas denied the application, finding that plaintiff was not disabled. (Tr. 33.) Like ALJ Vest, ALJ Andreas determined that plaintiff retained the physical residual capacity to perform light duty work, with mental restrictions no greater than those previously imposed by ALJ Vest. (Tr. 31.) ALJ Andreas's decision ultimately became the final decision of the Commissioner, and plaintiff subsequently filed the present action.

## I. STANDARD OF REVIEW

This Court's review of the R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* review as to those portions of the document to which objection is

3

made. Review of the ALJ's determination, in turn, is limited to determining whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation marks and citations omitted)).

If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *See Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). However, "even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (further citation omitted)). Likewise, this Court cannot uphold an ALJ's decision, even if there "'is enough evidence in the record to support the decision, [but] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (citations omitted)); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004) (finding that it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even

though substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months. 20 C.F.R. §§ 404.1505(a) and 416.920. Consideration of disability claims follows the familiar five-step review process. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) (citing 20 C.F.R. §§ 404.1520 and 416.920). The burden of proof is on the claimant through the first four steps; the burden shifts then to the Commissioner in step five. However, the claimant bears the ultimate burden of proving that he or she is entitled to disability benefits. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

## II. DISCUSSION

### A. *Application of the Law of the Case Doctrine*

The law of the case doctrine provides that, "on remand of a case after appeal, it is the duty of the lower court, or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions . . . ." *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967). In his amended merits brief, plaintiff argued that ALJ Vest failed to honor this doctrine by ignoring Magistrate Judge White's directive to "fully explain[] the weight given to the opinions of *all* the State Agency medical and psychological consultants of record." (Doc. No. 24 ["Am. Merits Br."] at PageID # 138, citing *Mischka*, 2010 WL 2759651, at *7, emphasis in original.) In particular, plaintiff noted that ALJ Vest failed to assign weight to the August 14, 2006 opinion of consultative examiner Ata

Ulhaq, M.D. (*Id*. at PageID # 138-39.) While conceding that ALJ Vest discussed Dr. Ulhaq's opinion, it was plaintiff's position that ALJ Vest failed to assign weight to it and specifically failed to address what he believed Dr. Ulhaq's medical opinion was, namely, that he was restricted to "sedentary work," due to his hip condition, and would be further restricted because his mental retardation prohibited him from spelling or performing simple math. (*Id*. at PageID # 139.)

Magistrate Judge Vecchiarelli agreed that ALJ Vest never assigned a particular weight to Dr. Uhaq's opinion but found this technical violation of Magistrate Judge White's remand instructions to be harmless. She reasoned that Dr. Ulhaq "did not assign [p]laintiff any limitations that were more extreme than those assigned by ALJ Vest." (R&R at PageID # 194.) Specifically, the R&R concluded that Dr. Ulhaq did not assign plaintiff any specific limitations because of his mental capabilities and offered only vague conclusions about plaintiff's need to sit down during the workday.[2] (*Id*. at PageID # 194-95.)

In his first objection, plaintiff challenges the conclusion in the R&R that the failure to follow the remand instructions was harmless error. While plaintiff concedes that Dr. Ulhaq did not specify the extent to which plaintiff would need to sit while at work, plaintiff suggests that the obvious implication of Dr. Ulhaq's opinion was that plaintiff should be restricted to sedentary work. Because ALJ Vest found that plaintiff

---

[2] In particular, the R&R noted that, while plaintiff required "'a job where he can sit because of his hips,' Dr. Ulhaq did not opine regarding a specific amount of time, or how often, [p]laintiff would need to be able to sit in order to perform work." (R&R at PageID # 195 [quoting Tr. 730].) Additionally, the R&R questioned whether Dr. Ulhaq's observation that plaintiff "has mental retardation," based only a physical examination was sufficient to constitute a mental limitation. (*Id*. at PageID # 194.)

was capable of performing light work, plaintiff insists that ALJ Vest's failure to honor the remand instructions in full cannot be considered harmless.

The Court cannot agree with plaintiff's position for two reasons. First, plaintiff's interpretation of Dr. Ulhaq's suggestion that plaintiff should "find some sort of job where he can sit because of his hips" as a medical opinion that plaintiff is restricted to sedentary work as that term is understood in the social security regulations is not supported by the report. *See* 20 C.F.R. §§ 404.1567(a) and (b). While Dr. Ulhaq recommended that plaintiff pursue further treatment and possible replacement of his hip, Dr. Ulhaq focused more closely on plaintiff's mental limitations, causing him to comment that he had "a feeling that this [is] a disability arising more than from his hip." (Tr. 727.) Considering the totality of Dr. Ulhaq's report, it is unreasonable to construe Dr. Ulhaq's "recommendation" that plaintiff find a job where he can sit down as a specific medical restriction that he be limited to sedentary work. Rather, Dr. Ulhaq's general observations of plaintiff's physical limitations are consistent with ALJ Vest's light duty restrictions. *See, e.g., Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (failure to assign weight to doctor's pain-related comments was harmless because the ALJ made findings consistent with doctor's opinion) (quoting *Wilson*, 378 F.3d at 547).

Second, the Court is far from convinced that Dr. Ulhaq's report, which consisted of little more than a string of conclusory observations and recommendations, constitutes a "medical opinion," as that term is understood in the social security regulations. Section 404.1527(a)(2) defines a "medical opinion" as one "that reflect[s] judgments about the nature and severity of your impairment(s), including your

7

symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R.§ 404.1527(a)(2). It is well settled that an administrative law judge "'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

Dr. Ulhaq's report fails to identify the range of activities that plaintiff can still perform despite his impairments, and contains no specific physical or mental restrictions. As noted in the R&R, Dr. Ulhaq "did not opine regarding a specific amount of time, or how often, [p]laintiff would need to be able to sit in order to perform work." (R&R at PageID # 195.) Because Dr. Ulhaq's report contained none of the indicia of a medical opinion, ALJ Vest's failure to assign it any particular weight was, at worst, harmless error, if, indeed, it was error at all.

For both of the foregoing reasons, plaintiff's first objection is overruled.

B.       *Application of Drummond and Res Judicata Principles*

In his amended merits brief, plaintiff also maintained that ALJ Andreas erred by affording ALJ Vest's determination that plaintiff was not disabled for the relevant time-period *res judicata* effect. In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit reaffirmed past holdings that principles of *res judicata* apply to social security decisions. *Drummond*, 126 F.3d 837, 842 (6th Cir. 1997). In so ruling, the court explained that "[a]bsent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id*. Under *Drummond*, the preclusive

effect to be afforded prior ALJ decisions is reserved for those decisions that have become the final decision of the Commissioner. *Id.*

In response to the Sixth Circuit's decision in *Drummond,* the Social Security Administration issued Acquiescence Ruling 98-4(6) ("AR 98-4(6)"), which provided that, for actions brought in district courts within the Sixth Circuit, an ALJ must give preclusive effect to a "final decision" on a prior claim "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." SSAR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).

Because the Appeals Council had not yet determined whether it would exercise jurisdiction over ALJ Vest's decision, plaintiff argued that ALJ Vest's decision was not a "final decision" entitled to preclusive effect and ALJ Andreas erred in treating it as such. *See Kearney v. Colvin*, 14 F. Supp. 3d 943, 949 (S.D. Ohio 2014) ("*Drummond* applies only to final decisions issued by the Commissioner, and does not apply when decisions have yet to become administratively final.") (citing *Wireman v. Comm'r of Soc. Security*, 60 F. App'x 570, 570 (6th Cir. 2003)). Again, Magistrate Judge Vecchiarelli agreed with plaintiff's argument but found the error to be harmless. According to the R&R, ALJ Vest's decision did not represent a final decision of the Commissioner because plaintiff's request for Appeals Council review was still pending when ALJ Andreas issued his decision. (R&R at PageID # 199, collecting cases.) Nonetheless, the R&R concluded that there was no prejudice to plaintiff because ALJ Andreas "engaged in an independent review of all of the evidence of record." (*Id.* at PageID # 200.)

9

In his second objection, plaintiff argues that he was prejudiced by the error because "ALJ Andreas's mistaken belief that ALJ Vest's decision was *final* placed an additional burden on [p]laintiff as '[t]he party seeking to avoid the application of *res judicata* and show changed circumstances must introduce substantial evidence of that change to overcome the presumption in favor of that application.'" (Obj. at 210, quoting *Watkins v. Comm'r of Soc. Sec.*, 2013 WL 6501306, at *2 (N.D. Ohio Dec. 11, 2013) (italics supplied by plaintiff). The Court agrees with plaintiff's position, in part.

Even a cursory reading of the decision reveals that ALJ Andreas required plaintiff to come forward with new and material evidence demonstrating a worsening of his condition. In reaching this conclusion, the Court highlights the fact that ALJ Andreas noted that "*Drummond* is clearly applicable to this case" and that he was "bound by the previous decision [of ALJ Vest]." (Tr. 18). He further found the "record does not contain new and material evidence establishing a change in condition" (Tr. 18), and concluded:

> In summary, the evidence does not corroborate the claimant's allegations of symptoms attributed to his impairments to an extent that would preclude the performance of light work with the restrictions stated above or that imposes *greater restrictions than those identified in ALJ Vest's April 2011 decision*.

(Tr. 31, emphasis added.).

Nonetheless, the Court finds that remand to correct the error is unnecessary because *now* ALJ Vest's decision is a final decision that would be entitled to preclusive effect. As the record reflects, on June 27, 2013, the Appeals Council declined to exercise jurisdiction over ALJ Vest's decision finding no disability for the period covered by the 2006 claim. (Tr. 5-8.) On remand, any ALJ considering the matter would be bound to do precisely what ALJ Andreas unwittingly (and erroneously) did. Under

these circumstances, a remand would amount to an exercise in futility. When "remand would be an idle and useless formality[,]" courts are not required to "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6, 89 S. Ct. 1426, 22 L. Ed. 2d 709 (1969)) (further citation omitted).

Moreover, plaintiff has failed to demonstrate that a *de novo* review would yield a different result than what was reached by ALJ Vest. While ALJ Andreas appears to have ultimately deferred to ALJ Vest's decision, ALJ Andreas also independently evaluated the evidence and, in each instance, arrived at the same conclusion as that previously reached by ALJ Vest. (*See, e.g.*, Tr. 23 [agreeing with ALJ Vest's determination that there was no evidence of decompensation]; Tr. 27 [giving little weight to Dr. Ulhaq's "unclear" opinion]; *see also* Tr. 28 [independently evaluating and assigning weight to Mr. Halas's 2009 opinion that was not before ALJ Vest].) Because plaintiff has failed to establish any prejudice resulting from ALJ Andreas's preclusive treatment of ALJ Vest's decision, remand would be unnecessary for this additional reason. *See, e.g., Williams v. Comm'r of Soc. Sec.*, No. 2:12-cv-430, 2014 WL 63919, at *26 (E.D. Tenn. Jan. 8, 2014) (remand was unnecessary to correct any error from possible misapplication of *Drummond* inasmuch as "the ALJ extensively reviewed all the medical evidence in the record, including a significant amount of new evidence, before reaching his RFC determination").

Plaintiff's second objection is overruled.

    C.    *New Evidence under 42 U.S.C. § 405(g)*

In his third and final objection, plaintiff argues that Magistrate Judge Vecchiarelli erred in recommending that his request for a remand on the basis of new

11

evidence be denied. Psychologist Thomas P. Lechowick, M.A., reviewed I.Q. testing performed on plaintiff in January 2012. The Weschler Adult Intelligence Scaales ("WAIS-III") revealed a verbal I.Q. of 81, a performance I.Q. of 68, and a full scale I.Q. of 73. (Tr. 304.) Mr. Lechowick also opined that plaintiff had borderline intellectual functioning, with academic skills in the range from seventh through tenth grades. (Tr. 303.) In declining to recommend a remand under § 405(g), Magistrate Judge Vecchiarelli reasoned that plaintiff did not meet his burden of demonstrating that this new evidence was material because it would not have changed the disposition of plaintiff's application, as a full scale score of 73 is greater than the I.Q. limit for an intellectual disability under 20 C.F.R. Part 404, Subpart P, Appx. 1, Listing 12.05C. (R&R at PageID # 203-04.).

Plaintiff contends that it was improper for Magistrate Judge Vecchiarelli to consider only the full scale I.Q. of 73 because the regulations dictate that the lowest score is to be used in connection with a determination of an intellectual disability under 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C. The Court agrees. Listing 12.00(D)(6)(c) explains:

> Due to such factors as differing means and standard deviations, identical IQ scores obtained from different tests do not always reflect a similar degree of intellectual functioning. The IQ scores in 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series. IQs obtained from standardized tests that deviate from a mean of 100 and a standard deviation of 15 require conversion to a percentile rank so that we can determine the actual degree of limitation reflected by the IQ scores. *In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.*

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00(D)(6)(c) (emphasis added); *see Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 270 (6th Cir. 1991) ("The regulations

12

require only that the lowest I.Q. score be used in conjunction with Listing 12.05 C.") Consequently, the Magistrate Judge should have considered the performance I.Q. score of 68 in her analysis. The Court must now determine whether this lower score warrants a remand under 42 U.S.C. § 405(g).

A district court may remand to the Commissioner for consideration of new and material evidence that for good cause shown was not previously presented to the Commissioner. *Faucher v. Sec'y Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994 (citing 42 U.S.C. § 405(g)); *see Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 n.1 (6th Cir. 1988). "[T]he burden of showing that a remand is appropriate is on the claimant." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).

Under § 405(g), evidence is new if it did not exist or was not available for review by the Commissioner at the time of the decision. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 110 L. Ed. 2d 563 (1990). Evidence is material if there is a reasonable probability that consideration of the new evidence would have produced a different administrative result. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2006); *Sizemore*, 865 F.2d at 711. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam)). "The Sixth Circuit takes a 'harder line' on the 'good cause' test." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993) (internal record cite omitted).

The record provides that, on July 3, 2006, agency consulting psychologist Richard C. Halas, M.A. conducted intellectual testing by administering the WAIS-III test to plaintiff. This testing generated a verbal I.Q score of 71, a performance I.Q. score of 67, and a full scale score of 66. (Tr. 230, 702.) While the performance and full scale scores were within the 60-70 range signifying possible mental retardation under 12.05(D), Mr. Halas found that the scores "generally seem inconsistent with [plaintiff's] previous placement in regular classes and his life functioning levels[.]" (Tr. 228, 700). He further diagnosed plaintiff with alcohol abuse disorder currently in remission and borderline intellectual functioning because plaintiff "does not meet the criterion for Mild Mental Retardation despite a full scale IQ of 66." (Tr. 700.)

Mr. Lechowick reached a similar conclusion on similar data. Despite at least one individual I.Q. score in the relevant range, Mr. Lechowick also diagnosed plaintiff with borderline intellectual functioning and not mental retardation. Because the lowest score generated on the Lechowick testing was actually two points higher than the lowest score registered by Mr. Halas's testing, and both psychologists reached the same conclusion that plaintiff did not suffer from mental retardation, plaintiff has failed to meet his burden of establishing that consideration of this new evidence would have yielded a different administrative result.

Plaintiff likewise has failed to demonstrate good cause for failing to present this new evidence at an earlier proceeding. According to plaintiff, he did not pursue I.Q. testing with Mr. Lechowick until 2012 because it was not until ALJ Andreas failed to seek clarification upon being advised by claimant that there were perceived ambiguities in the record with respect to the 2006 I.Q. testing that claimant was forced to

14

undergo additional testing. (Am. Merits Br. at 149.) In support of his position, plaintiff cites *Killings v. Comm'r of Soc. Sec.*, No. 1:12-CV-479, 2012 WL 5414953 (N.D. Ohio Nov. 6, 2012). There, the psychiatrist who administered the I.Q. test represented that the claimant's full scale score of 67 should be considered a "minimal estimate" of his intellectual functioning. *Id*. at *10. Given the use of the unclear phrase "minimal estimate," and the fact that the full scale score was not the lowest score, the court concluded that the ALJ had the duty to contact the medical source for clarification. *Id*. at *11 (citing 20 C.F.R. § 416.919p(b)) ("If the [CE] report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report").

In contrast, there was no ambiguity associated with Mr. Halas's evaluation of the 2006 I.Q. testing that required clarification. While acknowledging a qualifying full scale score, Mr. Halas found that plaintiff was not disabled due to a lack of functional limitations. (Tr. 228, 700.) There is nothing ambiguous about such a conclusion. It is well settled that a qualifying IQ score does not, without more, satisfy the listing of 12.05(C). *See Foster*, 279 F.3d at 354; Listing § 112.05D (the required level or severity for mental retardation is met when there is a "valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant limitation of function") (emphasis added). Mr. Halas made clear that he was discounting plaintiff's I.Q. testing results because of other relevant evidence of higher functioning. This was permissible under the regulations, and, therefore, ALJ Andreas did not abuse his discretion in declining to seek clarification or additional testing. *See Foster*,

15

279 F.3d at 354 ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary.") (citing 20 C.F.R. §§ 404.1517, 416.917). Consequently, plaintiff has failed to demonstrate good cause for the delay in seeking subsequent IQ testing in 2012. *See, e.g., McIntosh v. Comm'r of Soc. Sec.*, No. 07-CV-12969, 2009 WL 2139955, at *2-*3 (E.D. Mich. July 13, 2009) (ALJ's refusal to order additional IQ testing did not constitute "good cause" for a § 405(g) remand).

Because plaintiff can establish neither "materiality" nor "good cause" for a § 405(g) remand, plaintiff's third objection is overruled.

### III. CONCLUSION

For the reasons set forth herein, plaintiff's objections are overruled. The Court accepts the findings of the Magistrate Judge, in part, and the Court accepts the Magistrate Judge's ultimate conclusion that the applications for benefits should be denied. Thus, the decisions of the Commissioner to deny plaintiff's claims of disability insurance benefits and supplemental security income are affirmed and this case is dismissed.

**IT IS SO ORDERED**.

Dated: February 24, 2015

                                               **HONORABLE SARA LIOI**
                                               **UNITED STATES DISTRICT JUDGE**